UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------------X
MIHAELA POINARIU and VESELKO PAVKOVIC,          **COMPLAINT AND**
                                                **DEMAND FOR**
                              Plaintiffs,        **JURY TRIAL**

           -against-

THE CITY OF NEW YORK, NEW YORK CITY POLICE OFFICER     **12 CV 1494 (LAK)**
JAMES HALL, Sh. No. 05765, NYC POLICE OFFICER MATTHEW
SMITH, Sh. No. 18789, NYC POLICE OFFICER DARNELL       **ECF CASE**
RAYFORD, Sh. No. 19675, and POLICE OFFICERS "JOHN DOE"
(1-10) and "JANE DOE" (1-2), AEG LIVE, LLC and STRIKE FORCE
PROTECTIVE SERVICES, INC., and SECURITY GUARDS
"RICHARD ROE" (1-5),

                              Defendants.
-------------------------------------------------------------------------------------X


## INTRODUCTION

1.      This is a civil rights action in which the plaintiffs, MIHAELA POINARIU and

VESELKO PAVKOVIC, seek relief for defendants' violation of the plaintiffs' rights secured by the Civil

Rights Act of 1871, 42 U.S.C. §§1983 *et seq.*, and of rights secured by the Fourth and Fourteenth

Amendments to the Constitution of the United States.

2.      Plaintiffs also seek redress under Article I, Section 11 of the New York State

Constitution for denial of equal protection, and redress for the tortious conduct against plaintiffs by

defendants through Assault and Battery, False Arrest and Imprisonment, Malicious Prosecution,

Negligent Hiring, Training and Supervision, and violation of New York State statutes and New York

City local laws and/or rules.

3.      Plaintiffs seek damages, both compensatory and punitive, an award of costs, interest and

attorneys' fees, and such other and further relief as this Court deems equitable and just.

## JURISDICTION

4.      This Court has original jurisdiction over this action and the parties pursuant to 42 U.S.C. §1983 and 1988, the Fourth and Fourteenth Amendments to United States Constitution, and the provisions in 28 U.S.C. Sections 1331, *et seq.*   This Court has pendent and supplemental jurisdiction over all claims asserted herein under the laws of the State of New York, pursuant to 28 U.S.C. § 1367 (a).

## VENUE

5.      Venue is proper in the United States District Court for the Southern District of New York under 28 U.S.C. Section 1391(b) in that the incident arose in the Southern District of New York.

## JURY TRIAL DEMANDED

6.      Plaintiffs demand a trial by jury on each and every one of the claims as pled herein.

## PARTIES

7.      At all times relevant hereto, plaintiff MIHAELA POINARIU was and is a Permanent Resident Alien in the United States, of full age and a resident of the County of Suffolk, in the State of New York.

8.       At all times relevant hereto, plaintiff VESELKO PAVKOVIC was and is a citizen of the United States, of full age and a resident of the County of Suffolk, in the State of New York.

9.      At all times relevant hereto, defendants NEW YORK CITY POLICE OFFICER JAMES HALL [hereinafter "Hall"], Shield No. 5765, NYC POLICE OFFICER MATTHEW SMITH [hereinafter "Smith"], Sh. No. 18789, NYC POLICE OFFICER DARNELL RAYFORD [hereinafter "Rayford"], Sh. No. 19675, all NEW YORK CITY POLICE OFFICER JOHN DOES and JANE DOES, are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of the New York City Police Department, an agency of the City of New York.  All the individually named Defendants and all JOHN DOE and JANE DOE defendants are and were at all times

relevant herein acting under the direction and control of the New York City Police Department, a department of The City of New York.   All the individually named Defendants and all JOHN DOE and JANE DOE defendants, whose identities are not yet known, but whose identities the plaintiffs intend to discover, are being sued in their individual capacities.

10.    At all times relevant hereto, defendant THE CITY OF NEW YORK (also at times referred to as "CITY" or "NYC") was and is a municipal corporation duly incorporated and existing under the laws of New York State.   Pursuant to its Charter, New York City has established and owns, operates, manages, directs and controls the New York City Police Department as a constituent department or agency, which employs the individually named police officer defendants.

11.    Defendant AEG Live [hereinafter "AEG"] is a corporation licensed to do business in the State of New York.    Upon information and belief, AEG was and still is a corporation incorporated in Delaware doing business under and by virtue of the laws of the State of New York.   AEG Live is a producer of live entertainment, and it owns and operated the "Best Buy Theater" [hereinafter "Best Buy"].   Best Buy is a 2100 capacity concert venue located at West 44th Street and Broadway in the City and County of New York.   AEG operated the venue through the booking and presenting of live entertainment at Best Buy, the staffing of the facility, including venue security, and the establishment of venue policies with regard to security.   AEG had the ultimate responsibility for providing security at the venue.

12.    Defendant STRIKE FORCE PROTECTIVE SERVICES, INC., [hereinafter "Strike Force"] is a corporation licensed to do business in the State of New York.   STRIKE FORCE PROTECTIVE SERVICES, INC. is a provider of security services and, upon information and belief, was and still is a corporation, duly organized and existing under and by virtue of the laws of the State of New Jersey, and employed some of all of the security guards working at Best Buy Theater at the relevant times mentioned herein.

13.    Defendant Security Guards RICHARD ROE (1-5) were and are individuals whose identities are not yet known, but whose identities plaintiffs intend to discover, who were agents, servants and/or employees of defendant Best Buy and/or Strike Force, working in the capacity of security guards to provide security at the Best Buy Theatre, working under the direction, supervision and control of Best Buy and Strike Force.

## CONDITIONS PRECEDENT

14.    Plaintiffs have complied with all conditions precedent to commencing this action and, in particular, on or about May 26, 2011, within ninety (90) days after the claim upon which this action is based, plaintiff Poinariu duly served upon the defendants a Notice of Claim pursuant to and in full compliance with the provisions of § 50-e of the New York State General Municipal Law, and on or about April 21, 2011, within ninety (90) days after the claim upon which this action is based, plaintiff Pavkovic duly served upon the defendants a Notice of Claim pursuant to and in full compliance with the provisions of § 50-e of the New York State General Municipal Law.

15.    More than thirty (30) days have elapsed since the service of the Notices of Claim and adjustment or payment thereof has been rejected or refused by the defendants.

16.    This action is being commenced within one (1) year after the happening of the events upon which this claim is based.

17.    A statutory hearing of the plaintiff Poinariu pursuant to New York State General Municipal Law § 50-h was held on November 2, 2011, and a statutory hearing of the plaintiff Pavkovic pursuant to New York State General Municipal Law § 50-h was held on November 28, 2011.

## STATEMENT OF FACTS

18.    On or about February 28, 2011, plaintiffs Mihaela Poinariu and Veselko Pavkovic, along with their friend with special needs related to his multiple sclerosis and that friend's girlfriend, came by car from Long Island to New York City to see a concert at the Best Buy Theater located at 1515

Broadway at West 44th Street, in the County, City and State of New York.

19.     At some time after an introductory act was on stage and the venue had become smoky, at or about 11:00 to 11:30 p.m., the plaintiff Mihaela Poinariu's asthma began to bother her and she decided to go up the stairs out of the direct concert area to get away from the smoke.

20.     Her husband, plaintiff Veselko Pavkovic, followed his wife; Mr. Pavkovic was holding a glass of beer and Ms. Poinariu had a glass of water in her hand and both were walking up the steps leading up to the street level.

21.     Two security guards, whose identities are not now known and who are being sued under the fictitious names of "RICHARD ROE (1-5)," [hereinafter the "ROE defendants or ROE security guards or security guards] who were, upon information and belief, employed by STRIKE FORCE PROTECTIVE SERVICES, INC., and working at the request and direction and under the supervision and control of the BEST BUY THEATER, began confronting and pushing Mr. Pavkovic.

22.     Upon hearing some commotion, Ms. Poinariu turned around, saw her husband being accosted and asked what was going on.

23.     One of the security guards answered, advising the plaintiffs that they were not allowed to have the drinks with them.

24.     The plaintiffs had no prior knowledge that they were not supposed to bring their drinks upstairs.

25.     Once so informed, Ms. Poinariu said "I'm sorry" and admonished the guards not to punch her husband.

26.     A passing customer took Mr. Pavkovic's drink for him and Ms. Poinariu put her glass of water down.

27.     When Mr. Pavkovic requested to see a security supervisor, multiple security guards appeared and a person who identified himself as a supervisor told Mr. Pavkovic that he and his wife

would have to leave.

28.    Mr. Pavkovic asked if his wife could get her jacket, and one of the security guards cursed and said "No."

29.    As Ms. Poinariu went towards her husband, the shorter of the two ROE security guards pushed her away by punching her with great force on her left breast.

30.    The shorter security guard then grabbed Ms. Poinariu by the inside of her bra and dragged her up the stairs to the outside of the venue.

31.    The other security guard aggressively pushed Mr. Pavkovic up the stairs as well.

32.    Both plaintiffs were ejected from the concert venue without cause or justification.

33.    Three uniformed New York City police officers were standing outside the theater area.

34.    When the plaintiffs complained of the physical and sexual assault on Ms. Poinariu, the New York City police officers stationed outside the theater refused to take the complaint and told the plaintiffs that the assault upon Ms. Poinariu was between her and Best Buy.

35.    The plaintiffs told the officers that their disabled friend and his girlfriend, as well as Ms. Poinariu's jacket, were still inside the theater and that the security guards would not let them enter to tell their friends what happened and to retrieve her jacket.

36.    The officers shrugged their shoulders and said there was nothing they could do.

37.    When Mr. Pavkovic asked to see the shields of the New York City police officers stationed outside, the officers refused and turned aside to hide their shields.

38.    When the New York City police officers outside the Best Buy Theater would not assist the plaintiffs, Ms. Poinariu called 911 on her husband's cell phone to get some help.

39.    As plaintiffs were waiting for the police to respond, Mr. Pavkovic was trying to get information from 411 about the officers' precinct in order to file a complaint for the officers' failure to assist them and asked the police again why they were hiding their names and told them the police were

coming anyway.

40.    Upon hearing that Mr. Pavkovic had called other police, one of the officers said to the others, "Let's get him."

41.    One of the officers told Mr. Pavkovic that he was under arrest and Mr. Pavlovic said words to the effect of, "For what, asking for your names?"

42.    Without any cause or provocation, one of the three New York City police officers working outside the Best Buy Theater then threw Mr. Pavkovic face first into the pavement.

43.    The other police officers at the scene immediately jumped in.

44.    Thereafter, security guards also jumped on Mr. Pavkovic, and the male defendants were punching and kicking Mr. Pavkovic about his head and body, and maced Mr. Pavkovic directly in his face, mouth and eyes, blinding him immediately.

45.    Upon seeing the vicious assault on her husband, Ms. Poinariu grabbed her camera and started to record by video-camera what the police and security guards were doing.

46.    A short time later, several police cars arrived, one after another.  At first, there were four additional police officers, but by the end of the whole incident, there were about thirteen officers at the scene.

47.    Rather than seeking out Ms. Poinariu who had called for the police, the first four arriving New York City police officers immediately joined the original three officers and security guards and jumped on Mr. Pavkovic, punched and kicked him and kneed him in his back, grabbed his arms behind his back, and placed their knees upon his legs.

48.    One of the officers on top of the pile of officers, punched Mr. Pavkovic, looked up and saw Ms. Poinariu with her camera and stated words to the effect of "Take the bitch with the camera away."

49.    The shorter security guard and two others then forcefully threw Ms. Poinariu to the

ground.

50.    Ms. Poinariu landed on her knees and the contents of her pocketbook spilled out onto the ground.

51.    Ms. Poinariu saw her camera on the ground and reached for it, but a police officer and others pushed it away with their feet and a security guard picked it up and brought it into the theater.

52.    Another police officer came towards Ms. Poinariu and brutally pushed her down to the ground with all his weight on her body, grabbed her hands, pulled them behind her back and handcuffed her.

53.    Ms. Poinariu was lying on her stomach on the ground in a prone position.

54.    A female officer was putting pressure with her foot on Ms. Poinariu's injured left ankle and later sat for many minutes with her full weight on Ms. Poinariu's left ankle.

55.    A male police officer also intermittently put extremely painful pressure on Ms. Poinariu's injured left ankle.

56.    Ms. Poinariu was recovering from a recently broken left ankle and before that a broken left knee and the pressure and weight the officers put on her ankle caused her excruciating pain so intense that she saw stars.

57.    Ms. Poinariu repeatedly begged and implored the officers to please get off her ankle as they were hurting her terribly because her ankle and knee had been recently broken.

58.    A female NYCPD police officer "JANE DOE," whose identity is not now known, sarcastically stated words to the effect of "Too bad, you don't have a cast" and continued to maliciously and intentionally put her full weight with her knees on Ms. Poinariu's left ankle area.

59.    An African-American male NYCPD police officer reached underneath Ms. Poinariu, unzipped the zipper to her pants and searched inside her underwear.

60.    While Ms. Poinariu was lying prone on the ground, the shorter Best Buy security guard

approached her and gratuitously and maliciously, without any cause or justification, intentionally kicked Ms. Poinariu in her rib area.

61.     At a later time while Ms. Poinariu remained handcuffed on the ground, what appeared to be a NYCPD Sergeant and another officer wearing his NYCPD police hat, both independently approached Ms. Poinariu's head area and intentionally, gratuitously, wantonly and maliciously, kicked her in the head.

62.     Combined with the pain from the pressure and full weight the female officer placed upon her ankle, the repeated kicks to her head and ribs caused Ms. Poinariu to feel as though she was going to throw up.

63.     In addition to multiple NYCPD officers kicking Ms. Poinariu in the head area while she was down on the ground and handcuffed, multiple NYCPD officers also kicked Mr. Pavkovic in the head area while he was handcuffed and shackled by the ankles, intentionally, gratuitously, wantonly and maliciously, with absolutely no reasonable cause or justification.

64.     The second kick by NYCPD officers to Mr. Pavkovic's head was so vicious that another officer pulled the kicking officer back away from Mr. Pavkovic.

65.     Since Mr. Pavkovic was blinded by the mace and had tremendous difficulty simply breathing, the terror of not knowing where the next kick or assault would come from was horrific.

66.     Ms. Poinariu remained on the ground for about twenty minutes and could not stand on her left leg when the NYCPD officers finally lifted her off the ground, causing the officers to drop her back down again in a sitting position.

67.     Ms. Poinariu was continuously patted and searched, both inside and outside her clothing by various officers throughout the time she was forced to lie on the ground, and was again searched by two male officers while a female officer searched her purse and declared that she was clean.

68.     The police officers then lifted Ms. Poinariu and brought her to the police car and then to

the Midtown South, 14th Precinct.

69.    At the precinct, Ms. Poinariu requested the asthma medication that she always carried in her purse, but was told that the police did not have it.

70.    She was taken to Roosevelt Hospital from the precinct by ambulance, treated and taken back to the precinct.

71.    Mr. Pavkovic was taken by EMS to Bellevue Hospital where he did not feel safe in the company of the officers and advised the medical staff that he would seek treatment from his own doctors.

72.    Mr. Pavkovic suffered injuries to his back and neck, arms and wrists and fingers as well as psychological trauma from the totally unprovoked and unjustified incident.

73.    In addition to severe psychological injuries and physical injuries and bruises on her legs, ribs and arms, due to the excessive and unnecessary force used against her, Ms. Poinariu's ankle was sprained and re-injured to the point that extremely serious surgery requiring up to one year recovery time and other intense medical treatment that would interfere with her ability to continue to work has been recommended.

74.    Ms. Poinarui was transferred to the Community Court holding area on West 54th Street and Mr. Pavkovic was transferred to Central Booking and then 100 Center Street for arraignment.

75.    Ms. Poinariu was falsely charged with obstruction of governmental administration, P.L. §195.05, a Class "A" misdemeanor, under Docket No. 2011CN001783, which charge is punishable by incarceration on Rikers Island for up to one year.

76.    Mr. Pavkovic was falsely charged with two counts of Assault in the Second Degree, P.L. §120.05, a class "D" felony punishable by up to seven years' incarceration in state prison.   He was also falsely charged with Resisting Arrest, P.L. §205.30, Harassment in the Second Degree, P.L. §240.26, both class "A" misdemeanors, and Disorderly Conduct, P.L. §240.20, a violation.

77.     At or about 5:00 p.m. on March 1, 2011, after being held in police custody for approximately 18 hours, Ms. Poinariu was arraigned before the Honorable Richard M. Weinberg, a Judge of the Criminal Court of the City of New York, and released on her own recognizance to return to court on May 5, 2011.

78.     At about 9:00 p.m. on March 1, 2011, after being held in police custody for approximately 22 hours, Mr. Pavkovic was arraigned before the Honorable Felicia Mennin, a Judge of the Criminal Court of the City of New York, and released on his own recognizance.

79.     On May 5, 2011, at her first court appearance after her arraignment, Ms. Poinariu's case was dismissed and sealed.

80.     On January 5, 2012 Mr. Pavkovic's case was dismissed and sealed after he appeared in the Criminal Court of the City of New York, New York County, traveling from his home in Suffolk County, Long Island, approximately six times over the course of almost one year.

81.     Both plaintiffs Poinariu and Pavkovic were physically and psychologically injured from the false charges, malicious prosecution, assault and battery and unnecessary and excessive force used by the NYCPD police officers and the Best Buy security guards against them.

82.     The conduct of the defendants in falsely arresting, detaining, maliciously prosecuting and assaulting and battering the plaintiffs proximately caused plaintiffs' serious and permanent physical and emotional injuries, pain and suffering, mental anguish, humiliation and embarrassment.

83.     All conduct of the defendants herein was intentional, malicious, willful, wanton, reckless, negligent and careless.

**FIRST CLAIM**

**VIOLATION OF CONSTITUTIONAL RIGHTS**
**PURSUANT TO THE FOURTH AND FOURTEENTH AMENDMENTS**
**TO THE UNITED STATES CONSTITUTION AND 42 U.S.C § 1983**
**THE EXCESSIVE USE OF FORCE**
**(Defendants HALL, SMITH, RAYFORD and NYCPD OFFICERS JOHN DOE (1-10) and JANE DOE (1-2)**

84.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1-83 of this complaint, as though fully set forth herein.

85.    Defendants HALL, SMITH, RAYFORD and NYCPD OFFICERS JOHN DOE (1-10) and JANE DOE (1-2)  had the legal duty to use only the amount and degree of force in the apprehension of suspects as was reasonable under the circumstances, for the proper and efficient supervision and control of such persons.

86.    On the 28th day of February 2011, from approximately 11:00 p.m., at or around Broadway and 44th Street, in the County, City and State of New York, defendants HALL, SMITH, RAYFORD and NYCPD OFFICERS JOHN DOE (1-10) and JANE DOE (1-2) , without just cause or provocation and in violation of proper and appropriate police conduct, and with maliciousness and violence, used unnecessary and excessive force that was objectively unreasonable in effecting the arrest of the plaintiff  MIHAELA POINARIU, especially after she was already in handcuffs and fully and totally restrained, thereby violating the plaintiff MIHAELA POINARIU's Constitutional rights.

87.    As a result of the aforementioned conduct of defendants HALL, SMITH, RAYFORD and NYCPD OFFICERS JOHN DOE (1-10) and JANE DOE (1-2) , the plaintiff MIHAELA POINARIU was subjected to unnecessary and excessive force and sustained traumatic physical injuries, to her head, ankle, knees, legs, ribs, wrists and entire body, especially her left ankle, which was severely re-injured after already having been broken, resulting in grave and permanent injuries and disabilities, and suffered great physical damage and pain, as well as serious emotional and psychological injuries and was otherwise harmed, damaged and injured.

## SECOND CLAIM

### VIOLATION OF CONSTITUTIONAL RIGHTS
### PURSUANT TO THE FOURTH AND FOURTEENTH AMENDMENTS
### TO THE UNITED STATES CONSTITUTION AND 42 U.S.C § 1983
### THE EXCESSIVE USE OF FORCE
### (Defendants HALL, SMITH, RAYFORD and NYCPD OFFICERS JOHN DOE (1-10)

88.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1-83 of this complaint, as though fully set forth herein.

89.     Defendants HALL, SMITH, RAYFORD and NYCPD OFFICERS JOHN DOE (1-10) had the legal duty to use only the amount and degree of force in the apprehension of suspects as was reasonable under the circumstances, for the proper and efficient supervision and control of such persons.

90.     On the 28th day of February 2011, from approximately 11:00 p.m., at or around Broadway and 44th Street, in the County, City and State of New York, defendants HALL, SMITH, RAYFORD and NYCPD OFFICERS JOHN DOE (1-10) and JANE DOE (1-2) , without just cause or provocation and in violation of proper and appropriate police conduct, and with maliciousness and violence, used unnecessary and excessive force that was objectively unreasonable in effecting the arrest of the plaintiff   VESELKO PAVKOVIC, especially after he was already in handcuffs and fully and totally restrained, thereby violating the plaintiff VESELKO PAVKOVIC's Constitutional rights.

91.     As a result of the aforementioned conduct of defendants HALL, SMITH, RAYFORD and NYCPD OFFICERS JOHN DOE (1-10) , the plaintiff VESELKO PAVKOVIC was subjected to unnecessary and excessive force and sustained traumatic physical injuries, to his head, eyes, mouth, arms, hands, wrists and fingers, elbows, and entire body, resulting in grave and permanent injuries and disabilities, and suffered great physical damage and pain, as well as serious emotional and psychological injuries and was otherwise harmed, damaged and injured.

**THIRD CLAIM**

**VIOLATION OF CONSTITUTIONAL RIGHTS**
**PURSUANT TO THE FOURTH, FIFTH AND FOURTEENTH AMENDMENTS**
**TO THE UNITED STATES CONSTITUTION AND 42 U.S.C § 1983**
**FAILURE TO INTERCEDE TO PREVENT THE EXCESSIVE USE OF FORCE**
**(JOHN DOE and JANE DOE Defendants )**

92.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1-83 of this complaint, as though fully set forth herein.

93.     On the 28th day of February, 2011, the JOHN DOE and JANE DOE police officers who did not directly assault, batter and use unnecessary and excessive force against the plaintiffs had the opportunity to intercede on behalf of plaintiffs to prevent the other NYCPD defendants, including defendants HALL, SMITH, RAYFORD and the NYCPD OFFICERS JOHN DOE and JANE DOE who did participate directly in the unjustified assault upon the plaintiffs, from using unnecessary and excessive force in violation of the Fourth and Fourteenth Amendments of

the Constitution of the United States and 42 U.S.C. § 1983, but failed to do so in violation of their due process duty to intervene.

94.    The JOHN DOE and JANE DOE police officers who did not directly assault, batter and use unnecessary and excessive force against the plaintiffs had an affirmative duty to enforce the law and preserve the peace, including by stopping other police officers from violating the law.   Their failure to do so makes them liable for the constitutional violations of the Fourth and Fourteenth Amendments of the United States Constitution.

95.    By reason of the aforesaid, the plaintiffs suffered great physical damage, conscious pain and suffering, physical, mental, emotional and other harm and damages.

## FOURTH CLAIM

### VIOLATION OF CONSTITUTIONAL RIGHTS PURSUANT TO THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND 42 U.S.C § 1983 EXCESSIVE USE OF FORCE: Individual and Supervisory Liability (Defendant NYCPD JOHN DOE Sergeant)

96.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1-83 of this complaint, as though fully set forth herein.

97.    On the 28th day of February, 2011, the Defendant JOHN DOE who was the Sergeant at the scene of the incident, without just cause or provocation and in violation of proper and appropriate police conduct, and with maliciousness and violence, condoned and used unnecessary and excessive force in effecting the arrest of the plaintiffs MIHAELA POINARIU and VESELKO PAVKOVIC, such that the plaintiffs were seriously physically and psychologically injured.

98.    That the defendants, their agents, servants and employees, acting as agents and on behalf of the CITY OF NEW YORK and within the scope of their employment, intentionally and maliciously used unnecessary and excessive force, in deliberate indifference to the rule of law and the constitutional rights of the plaintiffs, beyond what any reasonable officer in the circumstances would have used, while effecting the arrest of the plaintiffs, especially in that the plaintiffs were already handcuffed and restrained when the NYCPD officers continued the use of unnecessary and excessive force and violent acts against the plaintiffs and the JOHN DOE Sergeant, rather than

restraining and stopping the other NYCPD officers, knowingly refused to stop them, and wrongfully and maliciously escalated the violence by continuing to use excessive physical force against the plaintiffs.

99.     Defendant JOHN DOE Sergeant displayed a deliberate indifference to the illegal conduct of the defendant officers (in addition to his own unlawful acts) under his supervision by failing to discipline these officers in any way for their illegal conduct, and by permitting and participating with these officers to engage in the violent actions in arresting the plaintiffs as set forth above, and in failing to correct or discipline the officers in any way for their unlawful and excessive use of force.   By these actions and omissions, defendant JOHN DOE Sergeant is in violation of the Fourth and Fourteenth Amendments to the United States and 42 U.S.C. Section 1983.

100.   By reason of the aforesaid, the plaintiffs suffered great physical damage, intimidation and fear, conscious pain and suffering, mental and emotional damage and were otherwise harmed and damaged.

## FIFTH CLAIM

### VIOLATION OF CONSTITUTIONAL RIGHTS PURSUANT TO THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND 42 U.S.C § 1983 (Defendant CITY OF NEW YORK)

101.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1-100 of this complaint, as though fully set forth herein.

102.     At all times material to this complaint, defendant CITY OF NEW YORK, acting through its police department, the New York City Police Department, had in effect de facto policies, practices, customs and usages that were a direct and proximate cause of the unconstitutional conduct of the defendant officers and sergeant.

103.     The acts and conduct of defendant CITY OF NEW YORK as set forth above in paragraphs 1-100 deprived plaintiffs of their rights, privileges and immunities under the laws and Constitution of the United States secured to plaintiffs by the Fourth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. Section 1983.   Plaintiffs were deprived of their right to be free from the unnecessary and excessive use of force and to due process under the law.

104.   At all times material to this complaint, the defendant CITY OF NEW YORK, acting through its police department, the New York City Police Department, had in effect de facto policies, practices, customs and usages that were a direct and proximate cause of the unconstitutional conduct of the defendant police officers.   Defendant CITY OF NEW YORK, as a matter of policy and practice, has with deliberate indifference failed to adequately discipline, train or otherwise direct police officers, including the defendant police officers and other police officers in the 14th Precinct Command, with regard to the rights of citizens, thereby causing the defendant officers in this case to engage in the unlawful conduct described above.

105.   Defendant CITY OF NEW YORK, in its policies and practices, has with deliberate indifference, failed to follow procedures for supervising and removing, when appropriate, unstable, malicious, violent, abusive, dishonest and biased police officers from their duties.

106.   Defendant CITY OF NEW YORK, and the New York City Police Department, knew or should have known that prior to February 28, 2011, the use of unnecessary and excessive force and other malicious, and inappropriate unlawful acts by defendant officers was occurring, and it is believed that there may have been complaints of such unlawful conduct by the particular officers named in this lawsuit, but defendant CITY OF NEW YORK failed to take appropriate steps to discipline or seriously punish such unlawful acts, thereby encouraging the continuance of the excessive use of force by refusing to address the problem in any meaningful way.

107.   On information and belief, the defendant CITY OF NEW YORK failed to effectively screen, hire, train, supervise and discipline its police officers and employees, including the defendant police officers and employees herein, for among others things: to screen, hire, train and supervise officers for their ability to respond to civilians with courtesy, professionalism and respect, to discipline officers for their propensity to disregard constitutional rights, and for their failure to protect citizens from unconstitutional conduct of other police officers and employees, thereby permitting and allowing

the defendant police officers and employees herein to be in a position to maliciously and unreasonably use excessive force against plaintiff and to otherwise cause her injury and violate her federal constitutional rights, and/or to permit these actions to take place.

108.   On information and belief, the defendant CITY OF NEW YORK maintained an inadequate structure for risk containment and stress management relative to its police officers and employees, and failed to create proper means of containing such risk and managing such stress.   Inter alia, the structure was deficient, at the time of selection of police officers and employees and thereafter during their employment, in its ability to evaluate and exchange information within the command structure of the police departments about the performance of individual police officers and employees; in its training of supervisory personnel to effectively and adequately evaluate performance of an officer or employee; and in its ability to otherwise put the command and/or staff structure on notice that an individual or individuals were at significant levels of risk to the public at large.   The effect of this was to permit police officers to function at levels of significant and substantial risk to the public in general.

109.   At all times material to this complaint, the defendant NYC, acting through New York City Police Department, had in effect de facto policies, practices, and customs that were a direct and proximate cause of the unconstitutional conduct of defendants HALL, SMITH, RAYFORD and the Doe Defendants. These de facto policies, practices and customs include, inter alia: the failure to properly screen, supervise, discipline, transfer, counsel, and/or otherwise control police officers engaged in the excessive and unjustified use of force, particularly those police officers who are repeatedly accused of such acts; and, the police code of silence wherein police officers regularly cover-up police use of excessive and unjustified force by telling false and incomplete stories, or by failing to report the use of excessive and unjustified force by police officers.

110.   As a result of the foregoing conscious policies, practices, customs and/or usages, defendant CITY OF NEW YORK has permitted and allowed the employment and retention of

individuals as police officers and employees whose individual circumstances place the public or segments thereof at substantial risk of being the victims of unlawful and/or unreasonable behavior. Such policies, practices, customs and/or usages are a direct and proximate cause of the conduct alleged herein and otherwise a direct and proximate cause of the injuries to the plaintiffs' herein.

110. These policies, practices and customs include, inter alia, the use of unnecessary and excessive force in making arrests, the bringing of false charges to cover the use of such unnecessary and excessive force and the acceptance of such unlawful behavior by the supervisors and fellow officers, in violation of the plaintiffs' rights as stated above.

111. As a result of the foregoing, the plaintiffs sustained great physical injury, conscious pain and suffering, mental and emotional injuries and were otherwise harmed, damaged and injured.

## SIXTH CLAIM

### VIOLATION OF CONSTITUTIONAL RIGHTS UNDER THE NEW YORK STATE CONSTITUTION, Art. I, § 11 (Defendants HALL, SMITH, RAYFORD and NYCPD OFFICERS JOHN DOE (1-10) and JANE DOE (1-2)

112. Plaintiffs repeat and reallege every assertion contained in paragraphs 1-111 of this complaint, as though fully set forth herein.

113. By the aforesaid acts, defendants have violated plaintiffs' right to the equal protection of laws under Article I, § 11 of the New York State Constitution, thereby giving rise to a cause of action pursuant to that Article.

114. The conduct and actions of defendants HALL, SMITH, RAYFORD and the DOE defendants, and defendant NYC, acting under color of law, in falsely arresting, detaining, and physically assaulting the plaintiffs, was done intentionally, maliciously and/or with a reckless disregard for the natural and probable consequences of their acts, was done without lawful justification, and was designed to and did cause specific and serious bodily, mental and emotional harm, pain and suffering in violation of the plaintiffs' Constitutional rights as guaranteed under the laws and

Constitution of the State of New York.

115.    The above-described actions and omissions engaged in under color of state law by the defendants, including defendant NYC, sued as a person within the meaning of Article I, § 11, deprived the plaintiffs of rights, including but not limited to, their rights under Article I, §§ 8, 9, guaranteeing freedom of expression and association, Article I, § 12, guaranteeing protection against unlawful seizure of his person, Article I, § 11 guaranteeing due process and equal protection under the law, and Article I, § 5 guaranteeing protection from cruel and unusual punishment.

116.   By reason of the Constitutional violations by defendants, plaintiffs have been damaged as set forth above.

## SEVENTH CLAIM

### NEGLIGENT HIRING, TRAINING and SUPERVISION
### (Defendant CITY OF NEW YORK)

117.    Plaintiffs repeat and reallege every assertion contained in paragraphs 1- 116 of this complaint as though fully set forth herein.

118.    The above-described injuries suffered by the plaintiffs are the proximate result of the negligence of the defendant NYC, and NYCPD, in that the defendant NYC, and NYCPD failed to exercise reasonable care in the hiring, employment, supervision, and training of its employees.

119.    The defendant NYC, and NYCPD had, or should have had, knowledge of the vicious and violent tendencies of its employees, including HALL, SMITH, RAYFORD and the DOE defendants.  Defendant NYC, and NYCPD knew or should have known of the unlawful actions of HALL, SMITH, RAYFORD and the DOE defendants through actual and constructive notice of their unlawful activities, including, but not limited to those allegations as set forth above. Defendant NYC, and NYCPD failed to exercise reasonable care by retaining and not terminating the employment of HALL, SMITH, RAYFORD and the DOE defendants, or taking other appropriate corrective action.

The occurrences complained of herein were due to the negligence and recklessness of the defendant NYC, and NYCPD.

120.    By reason of the tortious conduct of defendants, the plaintiffs have been damaged as set forth above.

### EIGHTH CLAIM

### ASSAULT and BATTERY
### (Defendants HALL, SMITH, RAYFORD and the DOE defendants and NYC)

121.    Plaintiffs repeat and reallege every assertion contained in paragraphs 1 - 120 of this complaint as though fully set forth herein.

122.    By the aforesaid acts, defendants have caused physical harm and injury upon the person of plaintiffs.  Defendants HALL, SMITH, RAYFORD and the DOE defendants acted willfully, intentionally, maliciously, and unjustifiably in the use of excessive force upon the person of plaintiffs, through the violent use of punches, kicks, shoves, pushes, and other abusive physical acts.

123.    The defendant CITY OF NEW YORK, its agents, servants and employees, including the defendants  HALL, SMITH, RAYFORD and the DOE defendants, without just cause or provocation and with the intention of creating grave fear of imminent force and violence being used against the plaintiffs, assaulted and battered the plaintiffs.

124.    That the defendants, their agents, servants and employees, acting as agents and on behalf of the CITY OF NEW YORK and within the scope of their employment, intentionally, willfully and maliciously assaulted and battered the plaintiffs, in that they had the real or apparent ability to cause imminent harmful and/or offensive bodily contact and intentionally did menacing acts which threatened such contact to the plaintiffs, and that those acts caused apprehension of such contact in the plaintiffs, and the defendants, in a hostile, offensive and intimidating manner, punched, kicked, intentionally caused

undue and unnecessary pain and physical harm, all with the intention of creating great fear in the plaintiffs that defendants would cause imminent harmful and violent bodily contact to the plaintiffs.

125.   By reason of the aforesaid, the plaintiffs suffered great intimidation and fear, and conscious pain and suffering, and were otherwise harmed and damaged.

126.    The acts and conduct of defendants HALL, SMITH, RAYFORD and the DOE defendants, as alleged in the forgoing paragraphs 1-83, constitute assault and battery under the laws of the State of New York.   This Court has pendent jurisdiction to hear and adjudicate such claims.

### NINTH CLAIM

### FALSE ARREST AND FALSE IMPRISONMENT
### (Defendants HALL, SMITH, RAYFORD and the DOE defendants and NYC)

127.   Plaintiffs repeat and reallege every assertion contained in paragraphs 1 - 126 of this complaint as though fully set forth herein.

128.    The NYCPD and NYC defendants intended to confine the plaintiffs; the plaintiffs were conscious of the confinement; the plaintiffs did not consent to the confinement; the confinement was not otherwise privileged.

129.   The acts and conduct of defendants HALL, SMITH, RAYFORD and the DOE defendants, constitute false arrest and false imprisonment under the laws of the State of New York.   This Court has pendent jurisdiction to hear and adjudicate such claims.

### TENTH CLAIM

### MALICIOUS PROSECUTION
### (Defendants HALL, SMITH, RAYFORD and the DOE defendants and NYC)

130.   Plaintiffs repeat and reallege every assertion contained in paragraphs 1 – 129 of this complaint as though fully set forth herein.

131.    The NYC defendants, including defendants HALL, SMITH, RAYFORD and the DOE defendants commenced or continued a criminal proceeding against the plaintiffs MIHAELA POINARIU and VESELKO PAVKOVIC.

132.    The criminal proceedings against plaintiffs MIHAELA POINARIU and VESELKO PAVKOVIC terminated in favor of the accused, when each of the criminal cases against each plaintiff was dismissed and sealed;  there was no probable cause for the criminal proceeding; the NYC defendants, including defendants HALL, SMITH, RAYFORD and the DOE defendants, acted with actual malice.

133.    The acts and conduct of defendants alleged in the forgoing paragraphs 1-132 constitute malicious prosecution under the laws of the State of New York.   This Court has pendent jurisdiction to hear and adjudicate such claims.

134.    By reason of the tortious conduct of defendants, the plaintiffs suffered great intimidation and fear, sustained great physical injury, conscious pain and suffering, mental and emotional injuries and were otherwise harmed, damaged and injured.

135.    For all claims arising under New York State Law, defendants are jointly and severally liable to the plaintiffs inasmuch as this action arises out of the exceptions set forth in § 1602, subdivisions 5, 7, and 11 of the Civil Practice Law and Rules.

## ELEVENTH CLAIM

### RESPONDEAT SUPERIOR LIABILITY
### (Defendant CITY OF NEW YORK)

136.    Plaintiffs repeat and reallege every assertion contained in paragraphs 1 – 135 of this complaint as though fully set forth herein.

136.    At all times pertinent here to, defendant police officers were acting within the scope of their employment as officers of the New York City Police Department.

137.    Defendant CITY OF NEW YORK, through its agents, servants and employees, expressly authorized the individual defendants HALL, SMITH, RAYFORD and the DOE defendants, to make arrests without probable cause, and to violate plaintiffs' constitutional rights; knew, through its agents, that the defendant officers had a propensity for committing such illegal acts in the line of duty, and acquiesced in the defendants' wrongful conduct.

138.    The CITY OF NEW YORK is thus liable under the doctrine of *respondeat superior*, for the intentional torts under New York State law, of defendants HALL, SMITH, RAYFORD and the DOE defendants, committed within the scope of their employment.   This Court has pendent jurisdiction to hear and adjudicate such claims.

139.   By reason of the tortious conduct of defendants, the plaintiffs suffered great intimidation and fear, sustained great physical injury, conscious pain and suffering, mental and emotional injuries and were otherwise harmed, damaged and injured.

140.   For all claims arising under New York State Law, defendants are jointly and severally liable to the plaintiffs inasmuch as this action arises out of the exceptions set forth in § 1602, subdivisions 5, 7, and 11 of the Civil Practice Law and Rules.

### TWELFTH CLAIM

### RESPONDEAT SUPERIOR LIABILITY
#### (Defendants STRIKE FORCE and AEG LIVE)

141.   Plaintiffs repeat and reallege every assertion contained in paragraphs 1 − 140 of this complaint as though fully set forth herein.

142.    At all times pertinent here to, defendant STRIKE FORCE PROTECTIVE SERVICES, INC.,  security guards were acting within the scope of their employment as security officers with STRIKE FORCE and AEG LIVE.

143.    While the plaintiffs were lawfully and properly in or near the Best Buy Theater, the defendants STRIKE FORCE and AEG LIVE, through their agents, servants, employees and/or

independent contractors, without cause or provocation and with great force and violence, violently seized, assaulted and laid hold of the plaintiffs MIHAELA POINARIU and VESELKO PAVKOVIC, including but not limited to intentionally, forcefully and violently laying hold of plaintiffs as set forth hereinabove, and intentionally and maliciously striking and kicking each of the plaintiffs, and expressly authorized the individual defendant security guards, to eject patrons from the Best Buy premises, to physically assault patrons at Best Buy, to detain patrons without cause, and to violate plaintiffs' rights; and knew, through its agents, servants, employees and/or independent contractors, that the defendant ROE security guards had a propensity for committing such illegal acts, while acting within the scope of their employment, and acquiesced in the individual defendant ROE's wrongful conduct.

144.    STRIKE FORCE and AEG LIVE are thus liable under the doctrine of *respondeat superior*, for the intentional torts under New York State law, of defendants ROE security officers, committed within the scope of their employment.   This Court has pendent jurisdiction to hear and adjudicate such claims.

145.   By reason of the aforesaid intentional assault and battery and tortious conduct committed by the defendants, their agents, servants and employees, acting within the scope of their authority, and without probable or reasonable cause, the plaintiffs suffered great intimidation and fear, sustained great physical injury, conscious pain and suffering, mental and emotional injuries and were otherwise harmed, damaged and injured.

146.   For all claims arising under New York State Law, defendants are jointly and severally liable to the plaintiffs inasmuch as this action arises out of the exceptions set forth in § 1602, subdivisions 5, 7, and 11 of the Civil Practice Law and Rules.

## THIRTEENTH CLAIM

### NEGLIGENT HIRING, TRAINING and SUPERVISION
### (Defendants STRIKE FORCE and AEG LIVE)

147.    Plaintiffs repeat and reallege every assertion contained in paragraphs 1- 146 of this complaint as though fully set forth herein.

148.   The above-described injuries suffered by the plaintiffs are the proximate result of the negligence of the defendants STRIKE FORCE and AEG LIVE, in that the defendants STRIKE FORCE and AEG LIVE failed to exercise reasonable care in the hiring, employment, supervision, and training of its employees.

149.   The defendants STRIKE FORCE and AEG LIVE had, or should have had, knowledge of the vicious and violent tendencies of its agents, servants, employees and/or independent contractors, including the ROE defendant security guards.

150.   Defendants STRIKE FORCE and AEG LIVE knew or should have known of the unlawful actions of the ROE defendant security guards through actual and constructive notice of their unlawful activities, including, but not limited to those allegations as set forth above.

151.   STRIKE FORCE and AEG LIVE failed to exercise reasonable care by retaining and not terminating, the employment of the individual ROE defendant security guards, or taking other appropriate corrective action.

152.   The defendants, their agents, servants and employees negligently, carelessly and recklessly failed to properly train and supervise their employees, in particular the ROE defendant security guards, in that they failed to train their employees in how to properly treat customers who act in a peaceful and non-violent manner, and failed to train their security guards to restrain from the use of wholly unjustified and unnecessary and excessive physical force, failed to train their security guards in the proper method of how to handle the ejecting of a customer with respect to retrieving or allowing a customer to retrieve personal property left inside the venue, to control their tempers and exercise proper deportment and temperament, and to otherwise act as reasonably prudent security guards; failed to give proper instruction as to their deportment, behavior and conduct, including failing to train security guards with respect to the proper care and preservation of personal property belonging to customers, guests and invitees on their premises, including cameras, especially when such camera was used to

document behavior by the security guards and/or police in any incident.

153.   The occurrences complained of herein and the resulting injuries to the plaintiffs were due to the negligence and recklessness of the defendants STRIKE FORCE and AEG LIVE in their negligent hiring, training and supervision of their agents, servants and employees.   This Court has pendent jurisdiction to hear and adjudicate such claims.

154.   By reason of the tortious conduct of defendants, the plaintiffs suffered great intimidation and fear, sustained great physical injury, conscious pain and suffering, mental and emotional injuries and were otherwise harmed, damaged and injured.

## FOURTEENTH CLAIM

### ASSAULT and BATTERY
### (STRIKE FORCE and AEG LIVE, ROE defendant Security Guards)

155.   Plaintiffs repeat and reallege every assertion contained in paragraphs 1 - 154 of this complaint as though fully set forth herein.

156.   By the aforesaid acts, defendants have caused physical harm and injury upon the person of plaintiffs.   Defendants ROE Security guards acted willfully, intentionally, maliciously, and unjustifiably in the use of excessive force upon the person of plaintiffs, through the violent use of punches, kicks, shoves, pushes, and other violent, forceful and abusive physical acts.

157.   The defendants STRIKE FORCE and AEG LIVE, its agents, servants and employees, including the defendant ROE security guards, without just cause or provocation and with great force and violence, violently seized, assaulted and laid hold of the plaintiffs, with the intention of creating grave fear of imminent force and violence being used against the plaintiffs, did assault and batter the plaintiffs.

158.   That the defendants, their agents, servants and employees, acting as agents and on behalf of the defendants STRIKE FORCE and AEG LIVE and within the scope of their employment,

intentionally, willfully and maliciously assaulted and battered the plaintiffs, in that they had the real or apparent ability to cause imminent harmful and/or offensive bodily contact and intentionally did menacing acts which threatened such contact to the plaintiffs, and that those acts caused apprehension of such contact in the plaintiffs, and the defendants, in a hostile, offensive and intimidating manner, punched, kicked, intentionally caused undue and unnecessary pain and physical harm, all with the intention of creating great fear in the plaintiffs that defendants would cause imminent harmful and violent bodily contact to the plaintiffs.

159.   The acts and conduct of defendants ROE Security guards, as alleged in the forgoing paragraphs, constitute assault and battery under the laws of the State of New York.   This Court has pendent jurisdiction to hear and adjudicate such claims.

160.  By reason of the aforesaid, the plaintiffs suffered great intimidation and fear, sustained great physical injury, conscious pain and suffering, mental and emotional injuries and were otherwise harmed, damaged and injured.

**WHEREFORE,** the plaintiffs request the following relief:

a. Compensatory damages in an amount to be determined;

b. Punitive damages in an amount to be determined;

c. Reasonable attorneys fees and costs; and

d. Such other and further relief as appears reasonable and just.

DATED:  New York, New York
        February 28, 2012

_____/s/_____         _____/s/_____
JOANNE M. DWYER (JD9852)                     DANIEL F. LYNCH (DL3025)
Attorney for Plaintiff Mihaela Poinariu      Attorney for Plaintiff Veselko Pavkovic
225 Broadway, 41st Floor                20 Vesey Street, Suite 410
New York, NY 10007                           New York, New York 10007
(212) 233-0591                               (212) 571-4888

UNITED   STATES   DISTRICT   COURT

SOUTHERN   DISTRICT   OF    NEW   YORK

MIHAELA POINARIU and VESELKO PAVKOVIC,

                                    Plaintiffs,

          -against-

THE CITY OF NEW YORK, NEW YORK CITY POLICE OFFICER
JAMES HALL, Sh. No. 05765, NYC POLICE OFFICER MATTHEW
SMITH, Sh. No. 18789, NYC POLICE OFFICER DARNELL
RAYFORD, Sh. No. 19675, and POLICE OFFICERS "JOHN DOE"
(1-10) and "JANE DOE" (1-2), AEG LIVE, LLC and STRIKE FORCE
PROTECTIVE SERVICES, INC., and SECURITY GUARDS
"RICHARD ROE" (1-5),

                                    Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

**Joanne M. Dwyer**                    **Daniel Lynch**
*Attorney for Plaintiff Mihaela Poinariu*    *Attorney for Plaintiff Veselko Pavkovic*
225 Broadway, 41st Floor               20 Vesey Street, Suite 410
New York, NY 10007                     New York, NY 10007
(212) 233-0591                         (212) 571-4888